RECEIVED
SDC, WESTERN DISTRICT OF
TONY R. MOORE, CLERK
3/4/15

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| QUENTA ENNIS,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 1:14-CV-00170 |
| VERSUS | |
| FEDERAL BUREAU OF PRISONS,<br>et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a complaint filed in forma pauperis by plaintiff Quenta Ennis ("Ennis") on February 3, 2014, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.[1] The sole remaining defendant is the United States of America. Ennis contends that, while he was incarcerated in the United States Penitentiary in Pollock, Louisiana ("USP-Pollock") on February 12, 2013, he was attacked by another inmate and severely injured. Ennis contends the attack occurred in front of Officer D. Daniels; Daniels had placed both Ennis and the other inmate (Ennis' cell mate) in hand restraints, but the other inmate was able to slip out of his restraints (Doc. 1). Ennis contends that Officer Daniels called for assistance then stood by and watched the assault, without intervening, until help arrived (Doc. 1). Ennis contends he suffered deep lacerations around both eyes and, because of his

---

[1] The United States of America was substituted for the Federal Bureau of Prisons and Officer D. Daniels (Doc. 9).

injuries, he has blurred vision and frequent headaches as well as permanent scars (Doc. 1).

The USA answered the complaint (Doc. 13) and filed a motion for summary judgment or to dismiss (Doc. 21).[2] Ennis filed a cross-motion for summary judgment with exhibits (Docs. 25, 27), to which the USA responded (Doc. 28). Those motions are now before the court for disposition.

Law and Analysis

Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts

---

[2] Defendants' motion for summary judgment or to dismiss will be considered as one for summary judgment only, since an affidavit is attached to the motion (Doc. 21), and Ennis filed evidence outside of the pleadings with his motion (Doc. 27).

submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th

3

Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

<u>FTCA Claim</u>

In the case at bar, the USA contends that Officer Daniels' decision not to physically intervene in the assault on Ennis falls within the discretionary function exception to its waiver of sovereign immunity to tort liability. The USA also argues that Officer Daniels did not know Ennis was in danger of being assaulted by his cell mates.

1. Tort Liability

The United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued. <u>Hebert v. United States</u>, 438 F.3d 483, 487 (5th Cir. 2006). Sovereign immunity is jurisdictional in nature. <u>U.S. v. Mitchell</u>, 463 U.S. 206, 212, 103 S.Ct. 2961 (1983). Such immunity protects the United States from liability, and deprives the court of subject-matter jurisdiction over claims against the United States. <u>Hebert</u>, 438 F.3d at 487-488, citing <u>Mitchell</u>, 463 U.S. at 212. Thus, before a court proceeds on a case against the United States, it must first decide whether one of the government's several waivers of sovereign immunity applies. <u>Truman v. U.S.</u>, 26 F.3d 592, 594 (5th Cir. 1994).

The FTCA allows the government to be held liable in tort for any negligent or wrongful act or omissions of any employee of the Government while acting within the scope of his office or

employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred (state tort law). 28 U.S.C. § 1346(b). See U.S. v. Muniz, 374 U.S. 150, 152-153, 83 S.Ct. 1850 (1963).

The FTCA authorizes inmates to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee. Muniz, 374 U.S. at 150, 83 S.Ct. at 1851. Although "[t]he Government is not an insurer of the safety of a prisoner," Jones v. U.S., 534 F.2d 53, 54 (5th Cir. 1976), cert. denied, 429 U.S. 978 (1976), prison officials have a duty of "ordinary diligence to keep prisoners safe from harm," 18 U.S.C. § 4042; Cowart v. United States, 617 F.2d 112, 116 (5th Cir.), cert. denied, 449 U.S. 903 (1980), quoting Jones, 534 F.2d at 54. The Federal Bureau of Prisons is required to provide for the safekeeping, care, and subsistence of all federal prisoners pursuant to 28 U.S.C. 4042, but Section 4042 does not indicate the manner in which the duty must be fulfilled," McKinney v. United States, 950 F.Supp.2d 923, 567 (5th Cir. 2010), aff'd 584 Fed.Appx. 229 (2014), and BOP officials generally have broad discretion in fulfilling this statutory obligation. Ashford v. United States, 463 Fed.Appx. 387, 391 (5th Cir. 2012); Spotts, 613 F.3d 559, 567 (5th Cir. 2010). A prisoner has the right to bring a cause of

action under the FTCA for a breach of the duty prescribed by Section 4042. <u>Muniz</u>, 374 U.S. at 164-65, 83 S.Ct. 1850. Also, <u>McKinney v. U.S</u>, 950 F.Supp.2d 923 (N.D.Tex. 2013).

### 2. Discretionary Function Exception to Liability

There are, however, exceptions to the waiver of sovereign immunity in the FTCA. See 28 U.S.C. § 2680(a)-(n). The discretionary-function exception, codified in 28 U.S.C. § 2680(a), provides that the United States has not consented to suit where the claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." See § 2680(a). Because the United States has not waived its sovereign immunity with respect to discretionary functions, courts lack subject matter jurisdiction over acts falling within the discretionary function exception. <u>Rosebush v. United States</u>, 119 F.3d 438, 440 (6th Cir. 1997).

The discretionary function exception does not apply if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," and an employee acts contrary to such directives. <u>Buchanan v. United States</u>, 915 F.2d 969, 971 (5th Cir. 1990). There is no element of judgment or choice if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow; the employee has no rightful option but to adhere to the directive.

6

Berkovitz v. U.S., 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-1959 (1988). Moreover, if a statute, regulation, or agency guideline allows the employee discretion, there is a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations. Gaubert, 499 U.S. at 324, 111 S.Ct. 1267. The discretionary function exception protects only governmental actions and decisions based on considerations of public policy. Gaubert, 499 U.S. at 322-23, 111 S.Ct. 1267.

In other words, the Government needs to establish that there was "room for choice" in making the allegedly negligent decision. If a "federal statute, regulation or policy" specifically prescribes a course of action for the federal employee to follow, the employee has no choice but to adhere to the directive. If the Government can establish that the challenged act involved an element of judgment, step two of the test is met and the discretionary-function exception will apply only if that judgment is of the kind that the exception was designed to shield. Ashford v. U.S., 511 F.3d 501, 504 (5th Cir. 2007).

### 3. USP-Pollock Policy

The USA argues that Officer Daniel's actions were within his discretion, as set forth in 18 U.S.C. § 4042, and that the USA cannot be held liable for his discretionary actions. Ennis contends that the policy at USP-Pollock is for an additional

officer to be present as backup when an inmate is placed in or removed from a cell in which other inmates are present. Ennis argues that the policy is mandatory, that Officer Daniels did not have any discretion as to having another officer to act as backup, and that Officer Daniels failed to follow a mandatory procedure, resulting in a prolonged assault on Ennis by one of his cell mates.

The USA submitted an affidavit by Officer Daniels and a statement of undisputed facts (Doc. 21), which show that, on February 12, 2013, in the Special Housing Unit ("SHU"), Daniels returned Ennis to his cell; at that time, Ennis shared his cell with two other inmates, Harrison and Thomas. Defendants show that, in the SHU, inmates occupying a cell are placed in restraints prior to the cell door being opened, so an inmate is placed in restraints (handcuffs) when he is removed from or returned to a cell (Doc. 21). Defendants show that any inmate occupying the same cell as the inmate being removed from or returned to the cell is also placed in restraints. Defendants show that inmates who are in the cell are ordered, one at a time, to place their hands behind their backs and through the food slot opening in the cell door so the restraints can be applied; restraints are removed in the same manner, one at a time (Doc. 21). Defendants further show that the restraints are applied around the wrists, leaving only a small amount of space (enough to fit the small finger into) between the inmate's wrist and the restraint, and once the restraints are

"clicked" into place, they cannot be removed without a key (Doc. 21).

Defendants show that, on February 12, 2013, before Daniels placed Ennis in his cell, Daniels placed restraints on Ennis' cell mates, Harrison and Thomas, in the manner described above (Doc. 21). Daniels then opened the cell door and placed inmate Ennis back into his cell and shut the cell door behind him (Doc. 21). When Daniels shut the cell door, inmate Harrison "slipped" out of his handcuffs and began to assault inmate Ennis (Doc. 21). Defendants show that, in rare instances, inmates are able to slip out of restraints despite the restraints being properly applied (Doc.21). Defendants show that Daniels immediately announced via radio that there was a fight in the cell, decided not to enter the cell where he would be outnumbered by the three inmates, and waited until additional staff arrived (Doc. 21). Upon the arrival of additional staff, Ennis was ordered to step to the back of the cell, Harrison was restrained again, all inmates were removed from the cell, and medical staff was notified to provide medical care to Ennis (Doc. 21). Defendants show that Ennis had not alerted them to any potential threat to him from Harrison, and that Ennis and Harrison had been cell mates since February 1, 2013 (Doc. 21) (about two weeks).

Ennis' statement of undisputed facts generally agrees with that of defendants, except Ennis shows in his statement of

9

undisputed facts that it is the policy and procedure in the SHU at USP-Pollock that, when restraints are placed on inmates through their cell doors, one officer places restraints on an inmate while another officer assists as "back up" (Doc. 25). Ennis further shows that, on February 12, 2013, Daniels attempted to restrain three inmates alone, without any back-up, in violation of the policy and procedures in place at USP-Pollock (Doc. 25). Ennis also shows in his statement of undisputed facts that four staff members are needed to be present before they respond to an incident such as a fight in a cell (Doc. 25).

Ennis shows there is a policy or procedure in place which requires the presence of another officer as backup when placing an inmate into a cell where other inmates are present. Apparently, that rule is a post order in at least some other BOP penitentiaries. See Wakefield v. U.S., 2014 wl 7011629 (N.D.Fla. 2014)(report and recommendation); Williams v. Holtzapple, 2010 wl 1254279 (M.D.Pa. 2010). In the case at bar, the USA has neither admitted nor denied Ennis' contention that Daniels violated a policy or procedure requiring the presence of another officer to act as backup when Daniels attempted to restrain three inmates and place one of the inmates in the cell by himself. It appears that Harrison could have initiated an assault on Ennis regardless of the presence of another officer as back up. However, assuming another officer should have been present, Daniels' attempt to restrain the

10

inmates by himself created an opportunity for inmate Harrison to assault Ennis for an extended period of time and cause greater injury, since Officer Daniels had to wait for other officers to arrive before he entered the cell to stop the assault.[3]

The USA has not refuted Ennis' assertions, set forth in his statement of undisputed facts, that Daniels failed to comply with proper procedures on that issue. Since it is not clear whether Daniels violated established procedures, the undersigned cannot determine whether the discretionary exception applies in this case.

### 4. Knowledge

The USA also contends that Officer Daniels did not have any knowledge of a potential problem between Ennis and his cell mates. Daniels stated in his affidavit that Ennis had not informed the prison that he had a problem with his cell mates, where as Ennis stated that he told Daniels that day that he may "get into it" with his cell mates if he remained in that cell.

Under Louisiana law, a penal institution is not an insurer of an inmate against attacks by other inmates. The standard is that

---

[3] Ennis also complains that Daniels did not intervene to stop the assault, but admits Daniels was outnumbered by the inmates, even though two of the inmates were in restraints. A correctional officer's failure to intervene in an inmate fight does not constitute an Eighth Amendment violation if there is evidence justifying the correctional officer's failure to intervene, such as when intervention would threaten the health and safety of all concerned (i.e. the guard is alone and unarmed). Williams v. Mueller, 13 F.3d 1214, 1215-16 (8th Cir. 1994), and cases cited therein.

of reasonable or ordinary care. In order to hold the penal authorities liable for an injury inflicted upon an inmate by another inmate, the authorities must know or have reason to anticipate that harm will ensue and fail to use reasonable care in preventing the harm. <u>Parker v. State</u>, 282 So. 2d 483, 486 (La. 1973), cert. den., 414 U.S. 1093, 94 S.Ct 725 (1973), citing <u>St. Julian v. State</u>, 98 So.2d 284 (La. App. 1st Cir. 1957). Also, <u>Harrison v. Natchitoches Parish Sheriff's Dept.</u>, 2005-0133 (La. 4/1/05), 898 So.2d 349, **2.

Ennis contends Officer Daniels was negligent in failing to wait for back up before attempting to restrain three inmates and place Ennis back into the cell with the other two inmates, particularly after Ennis had warned Daniels that there might be a physical altercation between himself and his cell mates that day.

The USA shows, in the statement of undisputed facts and Daniels' affidavit (Doc. 21) that Ennis had shared a cell with Harrison since February 1, 2013, that Ennis never told anyone that his safety was at risk, and that Officer Daniels did not know, and had no reason to know, that Harrison may attack Ennis on February 12, 2013. Ennis shows, in his statement of undisputed facts, that he told Officer Daniels, on February 12, 2013, that there was a possibility that he was going to "get into something" if he remained in that cell that day (Doc. 25). Ennis further shows that, in the SHU, there is no access to request forms for inmates

12

in the SHU to request a cell change, and that SHU inmates must notify the range officer or available staff (Doc. 25).

Therefore, there is a genuine issue of material fact, as to whether Officer Daniels knew that Ennis feared an assault by his cell mates on February 12, 2013, which precludes a summary judgment on this issue.

5. Summary

There are genuine issues of material fact on the issues of whether the discretionary exception to liability applies and whether Officer Daniels knew that Ennis might be assaulted by his cell mates which preclude a summary judgment at this time. Therefore, both the USA's motion and Ennis' motion for summary judgment (Docs. 21. 25) should be denied.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the motions for summary judgment filed by the USA (Doc.21) and Ennis (Doc. 25) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy

copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 4th day of March 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE